E-FILED
Monday, 10 November, 2025 12:14:44 PM
Clerk, U.S. District Court, ILCD

FILED
NOV 10 2025
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) Crim No. 2:19-cr-20072-CSB-EIL-2
)
CHRISTINE ANITA COLLINS, )
)
Defendant. )

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018**

COMES Defendant, CHRISTINE ANITA COLLINS ("Collins"), appearing *pro se,* and in support of this motion would show as follows:

## I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment

based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. PROCEDURAL HISTORY

### A. Procedural Background

On December 4, 2019, a grand jury in the United States District Court for the Central District of Illinois, Urbana Division returned a three (3) count Indictment charging Collins and two other co-defendants. See Doc. 1.[1] Count 1 charged Collins with Conspiracy to Distribute 50 Grams or More of Methamphetamine (Actual), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. *Id.*

On February 1, 2021, a Change of Plea Hearing was held and Collins pleaded guilty to the Count 1 of the Indictment, pursuant to a Written Plea Agreement. See Doc. 85.

On May 9, 2022, Collins was sentenced to a term of 192 months' imprisonment, 5 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100.00. See Doc. 138.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Central District of Illinois, Urbana Division in Criminal No. 2:19-cr-20072-CSB-EIL-2, which is immediately followed by the Docket Entry Number.

On May 16, 2022, Collins filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). See Doc. 138.

On May 8, 2024, Collins filed a Supplemental § 2255 Motion. See Doc. 148.

On September 13, 2024, this Court denied Collins' § 2255 Motion and Supplemental § 2255 Motion. See Docs. 170, 171.

On April 1, 2025, Collins filed a Motion for Compassionate Release, which was denied without prejudice on May 27, 2025. The Court emphasized that Collins may refile a Compassionate Release Motion provided that she includes the necessary and relevant supporting evidence. The Court further clarified that any renewed motion must be limited strictly to compassionate release issues and may not raise or re-raise claims of alleged sentencing errors. See Docs. 172, 175.

## B. Statement of the Facts

### 1. Offense Conduct

The government and Collins, through the advise of her counsel, stipulated to the following:

> Beginning on or about March 27, 2019, Collins agreed with co-defendant James Arnold to assist him in distributing methamphetamine acquired from James Arnold's ("Arnold") supplier in Ohio, by introducing Arnold to methamphetamine customers within the Central District of Illinois.

> During April and July 2019, Collins communicated with Arnold over Facebook messenger service. During one April 17, 2019 exchange between the Collins and Arnold over Facebook messenger service, Collins and Arnold discussed the prices they would charge for the quantity of methamphetamine they intended to obtain from an Ohio source. Collins and Arnold also discussed that the two would travel to and from Ohio in separate cars in order to evade law enforcement. Collins also agreed with Arnold that the defendant would sell the methamphetamine obtained.
>
> During a June 29, 2019 discussion held over Facebook messenger service, Collins provided the price she charged for methamphetamine to Arnold upon his request, stating that she charged $1,100 for a quarter pound of methamphetamine. Collins provided this information to Arnold in order to assist their joint venture by making sure the prices are competitive such that the joint venture would be profitable.
>
> After law enforcement arrested Arnold on July 9, 2019, Arnold contacted Collins from jail through another inmate. Arnold instructed Collins in code to "have herself a cup of coffee" in Arnold's hotel room at the Quality Inn, located in Mattoon, Illinois, within the Central District of Illinois. Collins understood that coded message meant that she should gather the approximately 200 grams of methamphetamine Arnold had stored in his coffee maker within the room he rented at the Quality Inn in Mattoon, Illinois. Collins did, in fact, travel to the Quality Inn on July 10, 2019 in an attempt to recover the methamphetamine from Arnold's room.

See Doc. 85.

2. <u>Plea Proceeding</u>

On February 1, 2021, a Change of Plea Hearing was held before Magistrate Judge Eric I. Long. Collins pleaded guilty on the Count 1 of the Indictment, pursuant to a Written Plea Agreement. See Doc. 85. In exchange of his guilty plea, the

government recommended to the Court that Collins would receive a three-level reduction to her guideline calculations, consistent with U.S.S.G. §§ 3E1.1(a) and (b). *Id.*

3. Sentencing Proceeding

On May 9, 2022, a Sentencing Hearing was held before Judge Colin Stirling Bruce. The District Court sentenced Collins to 192 months' imprisonment. See Doc. 138. It is followed by 5 years' Supervised Release. *Id.* The Court also ordered a payment of a Mandatory Special Assessment Fee of $100.00. *Id.* No direct appeal was filed in this case.

4. Postconviction Proceeding

On May 16, 2022, Collins filed a § 2255 Motion and Supplemental § 2255 Motion on May 8, 2024. See Docs. 138, 148. First, Collins claimed that she received ineffective assistance counsel because Martinkus was removed from the case over her objection, leaving her with Sarm as sole counsel. Collins did not specify how this qualified as deficient performance or how she was prejudiced by this. The second ground raised alleges that Sarm told her she should plead guilty "with the expectation of a sentence of 5 to 8 years." *Id.* at 5. Collins asserted that this is a failure of Sarm's

to "fully explain my sentencing exposure," presumably because she received a sentence higher than that. *Id.* The remedy Collins sought was either setting aside her sentence or her plea. *Id.* Subsequently, the District Court denied his motions after reviewing and found that Collins has not shown ineffective assistance of counsel on these grounds. See Docs. 170, 171.

## III. DISCUSSION

As a preliminary matter, Collins respectfully requests that this Court be mindful that courts have a duty to construe *pro se* motions liberally. See *United States v. Norwood*, 602 F.3d 830 (7th Cir. 2010) (*Pro se* pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

### A. Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence

This Court has the power to adjust Collins' sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family

circumstances. A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are present in this case.

1. <u>Historical Framework</u>

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court. Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that the statute was intended, in part, to abolish and replace federal parole. Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences" that would previously have been addressed through the former parole system. *Id.* at 121. The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id.* Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

2. <u>Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances</u>

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission…shall describe what should be considered "extraordinary and compelling reasons" for sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could, however, be considered with other reasons to justify a reduction.

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the Guidelines Manual and the reasons therefor. As authorized by such section, the

Commission specifies an effective date of November 1, 2023, for these amendments:

> (b) *Extraordinary and Compelling Reasons.–* Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (1) *Medical Circumstance of the Defendant.–*
>
> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
> (ii) suffering from a serious functional or cognitive impairment, or
> (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being

affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

(2) *Age of the Defendant.*— The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) *Family Circumstances of the Defendant.*—

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4) *Victim of Abuse.*— The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5) *Other Reasons.*— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the

> reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).
>
> (6) *Unusually Long Sentence.*— If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

This amendment responds to, among other things, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239, which amended 18 U.S.C. § 3582(c)(1)(A) to authorize courts to grant a motion for a sentence reduction upon a defendant's own motion. Previously, a court was authorized to do so only upon the motion of the Director of the Bureau of Prisons ("BOP"). Congress amended the law for the express purpose, set forth on the face of the enactment, of "increasing the use" of sentence reduction motions under section 3582(c)(1)(A). First Step Act § 603(b).

3. <u>The First Step Act</u>

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release. *Id.* at § 603. Now,

instead of depending upon the BOP to determine an inmate's eligibility for extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant." A defendant can file an appropriate motion if he or she has exhausted all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this provision is to give federal courts the ability to hear and resentence a defendant even in the absence of a BOP motion. Congress labeled this change "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018). Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018). In the House, Representative Nadler noted that the First Step Act includes "a number of very positive changes, such as … improving application of compassionate release, and providing other measures to improve the welfare of federal inmates." 164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

4. Collins Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

In this case, Collins has filed a request for compassionate release to Jennifer A. Broton ("Broton"), Warden at FCI Aliceville, however, her request was denied on July 11, 2025. See Exhibit 1. Because 30 days have lapsed from the receipt of the request and the BOP failed to file a motion on Collins' behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

**B. The Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Are Extraordinary and Compelling Circumstances That Warrant Release.**

Section 3582(c) states that a district court cannot modify a term of imprisonment once it has been imposed except that, in any case:

> The court, upon motion of the Director of the Bureau of Prisons, or the defendant, pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In this case, there are at least three extraordinary and compelling reasons warranting such a reduction, discussed as follows:

1. Requests Based on Non-Medical Circumstances–Incapacitation of the Prisoner's Mother Due to Health Issues

Collins submits this motion for a Reduction in Sentence ("RIS") under 18 U.S.C. § 3582(c)(1)(A), commonly referred to as the compassionate release statute, on the basis of extraordinary and compelling family circumstances. Specifically, Collins seeks a reduction to serve as the primary caregiver for her elderly mother, who suffers from a severe heart condition exacerbated by her advanced age. Additionally, Collins' mother has assumed full-time care and guardianship of Collins' 14-year-old daughter, placing an overwhelming burden on her given her own declining health. Furthermore, Collins' sibling, Kathy Carey, has been diagnosed with terminal Stage 4 cancer, with doctors having exhausted all viable treatment options.

The U.S. Sentencing Guidelines recognize that family circumstances, particularly when an incarcerated individual is the only available caregiver for an incapacitated or ailing family member, may justify compassionate release (U.S.S.G. § 1B1.13). Courts

i. United States v. Clark, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020)

- Quoting that in *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at *5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id.* at *6.

ii. United States v. Brooks, Case No. 07-cr-20047-JES-DGB (C.D. Ill. May. 15, 2020)

- Quoting that in *Redd*, the district court held "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in USSG § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement."

iii. United States v. Walker, No. 11-381, 2022 WL 1487804 (S.D.N.Y. May 11, 2022)

- Compassionate release was granted to a defendant who was the only available caregiver for a minor child, emphasizing the importance of family responsibilities in such decisions.

Collins is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of her sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act and compassionate release grants

of courts in light of the instant pandemic. Nor does the First Step Act's lack of retroactivity justify withholding sentencing relief given the overall purpose of the First Step Act amendments, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

Next, Collins argues that a reduction of sentence is warranted to avoid unwanted sentencing disparities, taking into consideration case-specific circumstances related to Collins' character, and in light of her post-sentencing rehabilitation. Collins contends that leaving her current sentence in place creates disparity between Collins and comparably situated defendants. In addition to the need to avoid unwarranted sentence disparities, Collins argues that the unique circumstances of her case warrant a variance.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir.

2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when

the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

3. <u>Collins' Remarkable Rehabilitation</u>

Since entering federal custody, Christine Collins has demonstrated extraordinary commitment to personal growth, rehabilitation, and reentry readiness. Her record reflects a sincere and sustained effort to transform her life, advance her education, and prepare for successful reintegration into society.

Upon arrival at the Federal Correctional Institution in Aliceville, Alabama, Collins immediately engaged in self-improvement. See Exhibit 2. She earned her GED on August 18, 2022, achieving strong academic scores across all subjects. *Id.* Recognizing the value of continued learning, she has since completed a diverse range of Adult Continuing Education (ACE) and vocational programs that reflect both intellectual curiosity and vocational ambition. These include Introduction to Cosmetology, Geography, Cultural Anthropology, Conflict Management, Team Building, Business Start-Ups, and Thinking on Your Feet—all of which have helped her develop essential cognitive, communication, and leadership skills. *Id.*

In addition to academic success, Collins has completed several First Step Act

(FSA)-approved courses, such as Resolve Workshop and Drug Education, demonstrating accountability and insight into the factors that contributed to her past conduct. She has successfully completed drug treatment programs and maintains a clear record of sobriety and compliance. *Id.* Her BOP reentry plan lists her as "Low Risk Recidivism Level" and confirms she has no outstanding rehabilitative needs in key areas such as cognition, substance abuse, mental health, or education—an indicator of her stability and readiness for release. *Id.*

Vocationally, Collins has excelled in professional certifications that provide tangible employment pathways. She earned the ServSafe Food Handler Certification and ServSafe Manager Certification (National Restaurant Association, expiring 2028), qualifying her for work in food service and hospitality. *Id.* Most notably, in September 2025, she completed an accredited Auto Mechanics Diploma Program through Stratford Career Institute, graduating with highest honors and a 90% overall average. This rigorous 460-hour program covered a comprehensive curriculum in automotive systems, diagnostics, safety, and emerging vehicle technologies—skills that will directly support lawful employment opportunities upon release. *Id.*

Beyond academics and vocational training, Collins has actively participated in faith-based and character-building programs. She completed the Discover Bible Course through the Voice of Prophecy Worldwide Bible School, the Amazing Facts Bible

Study, and the Embracing Interfaith Cooperation Program sponsored by MCC Chicago Religious Services. *Id.* These programs reflect her moral development and spiritual grounding, essential elements in her transformation.

Physically and mentally, Collins has maintained good health. She is classified as Care Level 1 (Healthy) for both medical and mental health, and has participated in the Running Club, achieving Gold Level recognition in September 2025—a sign of her commitment to discipline and wellness. *Id.* She has also served as a Unit Orderly, earning positive work reports and demonstrating responsibility, teamwork, and dependability.

Her Summary Reentry Plan confirms she has maintained good institutional adjustment, completed all financial obligations, and has no detainers or unresolved disciplinary issues other than a single minor incident in 2024, which she accepted responsibility for and corrected promptly. She remains actively engaged in her reentry planning, maintaining strong family connections with her mother, Judy Smith, who has offered housing and support upon release.

In sum, Christine Collins has made remarkable strides in rehabilitation. She has transformed her time in custody into a period of education, personal accountability, and growth. Through consistent effort, she has built a foundation for a productive, law-abiding future and embodies the rehabilitative purpose envisioned by the First Step

Under 18 U.S.C. § 3582(c)(2), to modify Collins' sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of time served is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

## IV. CONCLUSION

For the foregoing reason, Collins prays this Court would consider her Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018 in accordance with U.S.S.G. Amendment 814, based upon the "extraordinary and compelling reasons" and reduce her sentence. Also, Collins respectfully requests this Court to consider the BOP record, her mother's medical condition, and her daughter's sole guardian, and join in recommending her release.

Respectfully submitted,

Dated: November 3, 2025

Christine Collins

CHRISTINE ANITA COLLINS
REG. NO. 54807-074
FCI ALICEVILLE
FEDERAL CORR. INSTITUTION
P.O. BOX 4000
ALICEVILLE, AL 3544

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2025, a true and correct copy of the above and foregoing Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018 was sent via U. S. Mail, postage prepaid to William J. Lynch, Assistant U.S. Attorney at U.S. Attorney's Office, 201 South Vine, Urbana, IL 61802.

Christine Collins
CHRISTINE ANITA COLLINS