E-FILED
Friday, 30 January, 2026 01:10:42 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-CR-20072-002 |
| | ) | |
| CHRISTINE A. COLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES OF AMERICA'S RESPONSE TO THE
## DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

NOW COMES the United States of America, by Gregory M. Gilmore, Acting United States Attorney for the Central District of Illinois, and William J. Lynch, Assistant United States Attorney, and hereby responds to the Defendant's Motion For Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018. R. 178. The United States requests that this Court deny the defendant's newest motion because (1) no extraordinary and compelling reasons exist warranting release; and (2) the 18 U.S.C. § 3553(a) sentencing factors independently preclude the requested relief.

## FACTUAL AND PROCEDURAL HISTORY

### A.    Criminal History

The defendant, Christine A. Collins, committed her first criminal offense in 1993 when she was convicted of Driving Under the Influence of Alcohol in Charleston, Illinois. PSR ¶42.[1] While on probation for that offense, she was convicted of Battery for punching another person and was convicted of Criminal Trespass to State Supported Land. PSR ¶43. On the same date she pled to those offenses, she also pled guilty to Aggravated Battery for hitting two other people with a tire iron and Retail Theft for stealing from a supermarket. PSR ¶44.

In 1997, she was convicted of Forgery for intentionally creating and passing several bad checks. PSR ¶46. Although she received probation, she was eventually resentenced to a three-year term in the Illinois Department of Corrections after her probation was revoked for issues related to drug use. PSR ¶44. After exiting prison, Collins pled to another DUI and two bad check cases in 2002. PSR ¶47-50. Her run of bad acts there, also including a 2002 felony Obstructing Justice in Charleston, Illinois, ended with a 2003 Burglary conviction in Tuscola, Illinois where she received a four-year sentence to the Illinois Department of Corrections. An unrelated 2003 conviction for Possession of Methamphetamine Manufacturing Chemicals resulted in a four-year term of imprisonment beginning on April 11, 2003. PSR ¶54. While serving the Burglary and

---

[1] Collins' criminal history is pulled from paragraphs 42 to 58 of the Presentence Report (PSR) in this case. R. 97. Collins did not object to any of the prior convictions or their conduct descriptions, and the district court adopted the PSR.

Chemicals sentences, an unresolved Forgery case from Charleston, Illinois resulted in a consecutive four years and six months of imprisonment to the Burglary case. PSR ¶53.

At the conclusion of those sentences, Collins appeared to have been rehabilitated until she was convicted of a 2014 Possession of Methamphetamine with Intent to Deliver case. PSR ¶56. While on probation for that methamphetamine case, she was convicted of a 2015 Theft. PSR ¶57. In 2017, she was convicted of Forgery, receiving a 27-month sentence to the Illinois Department of Corrections. PSR ¶58. She was on parole when she committed the conduct in this case. PSR ¶58.

### B.    The Methamphetamine Conspiracy

Collins was released from the Illinois Department of Corrections on her Forgery case on March 25, 2019. About two days later[2], Collins met and conspired with co-defendant James Arnold to distribute methamphetamine. She would introduce him to customers in the central Illinois area and he would obtain methamphetamine from a supplier in Ohio. Arnold also fronted Collins one ounce of methamphetamine, which she successfully sold. She later bought a half-pound of methamphetamine from him and they travelled together and sold it in central Illinois. Messages occurred over Facebook Messenger between them in April and June of 2019 on how to avoid being detected by law enforcement and other points of business.

Arnold was arrested on July 9, 2019 following a controlled buy of methamphetamine from him that eventually returned 98% pure. Following his arrest,

---

[2] This summary combines information from the plea agreement's factual basis, R. 85 at ¶22, and the PSR ¶10-25.

Collins took a call from Arnold regarding a stash of undiscovered methamphetamine in a coffee maker at a hotel in Mattoon, Illinois. Collins went to the hotel and attempted to retrieve the methamphetamine but was unable to do so. On August 9, Collins was arrested and later admitted to working with Arnold to distribute methamphetamine. She admitted to moving and/or selling about 5.6 kilograms of methamphetamine with Arnold.

Another co-conspirator, charged in a separate case number in 2:20-cr-20060, was Collins' adult daughter, Courtney Jo Mills. Mills pled guilty to related Conspiracy to Distribute Methamphetamine and Distribution of Methamphetamine charges and identified her mother, Collins, as one of the individuals in that conspiracy. 2:20-cr-20060, R. 31. Mills' factual basis identified that Collins knew Mills was selling methamphetamine and that Collins acted as a source of methamphetamine for Mills on occasion. *Id.* at 12.

### C.     The Original Proceedings

On December 4, 2019, a grand jury in the Central District of Illinois charged Collins by indictment with one count of Conspiracy to Distribute Methamphetamine (Actual) in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and (b)(1)(A). R. 1. Collins was later arrested and arraigned. D.E. 1/9/20. At the arraignment, the Court appointed CJA counsel Steven Sarm to represent Collins. *Id.* CJA counsel James Martinkus later joined as cocounsel. D.E. 2/2/2020.

To avoid a potentially higher sentence, Collins entered into a Plea Agreement with the United States. As part of that agreement, Collins negotiated a commitment from the

United States that the parties would jointly recommend to the Court that she receive a three-level reduction to her guideline calculations, consistent with U.S.S.G. § 3E1.1. R. 85 at ¶11. The Agreement also contained language regarding Collins' cooperation and how the United States may make a motion for an additional reduction to her guidelines range under U.S.S.G. §5K1.1. *Id*. at ¶13-18. Each party remained free to recommend whatever sentence they desired unless the United States moved for a reduction under § 5K1.1. *Id*. at ¶20. The Agreement included a waiver of her rights to directly appeal and collaterally attack her sentence. *Id*. at ¶24-30.

In advance of sentencing, the U.S. Probation Office authored an initial Presentence Investigation Report. R. 95. It was later amended to include objections received from the defense. R. 97 ("PSR"). The PSR identified the statutory range of punishment as imprisonment from 10 years up to life. *Id*. at ¶106. Collins was identified as a career offender pursuant to U.S.S.G. § 4B1.1 and held accountable for 11,758 kilograms of converted drugs weight. *Id*. at ¶31, 37. The PSR ultimately reflected offense level reductions for acceptance of responsibility and a timely plea, as recommended in the negotiated plea agreement. *Id*. at ¶38-39, *see also* R. 85 at ¶11. This resulted in an advisory guidelines range of 262-327 months. R. 97 at ¶107.

Collins objected to her drug weight total for relevant conduct purposes and the criminal history points assigned to her 2002 Burglary. PSR Addendum. Neither objection was meritorious. R. 137. Collins also objected to her career offender enhancement at sentencing, arguing that it was incorrectly assigned to her where her drug priors did not qualify as "controlled substance offenses." The Court considered her objection and

rejected it stating that Seventh Circuit law treated the Guidelines definition of "controlled substances offense" differently from the statutory definition of "felony drug offense" for 21 U.S.C. § 851 sentencing enhancement purposes. Sent. Tr. 9-14; *See generally United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020) (analyzing the incomplete overlap of the statutory "felony drug offense" definition and the Guidelines "controlled substances offense" definition).

Once objections were dealt with, the government made a § 5K1.1 motion and recommended a 20% departure from the career offender guideline range, for a sentence of 209 months. Tr. 4 at 29. At the conclusion of the hearing, the Court sentenced Collins to a below guidelines, and below § 5K1.1 recommendation, sentence of 192 months. R. 138. This represented an almost 27% variance from the bottom of her career offender guidelines and a near 10% variance from what the United States had recommended under § 5K1.1.

### D.    Unsuccessful Collateral Attack

On April 20, 2023, Collins filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. R. 148. The Motion identified two grounds for relief, each under a theory of ineffective assistance of counsel. First, Collins claimed that she received ineffective assistance counsel because Mr. Martinkus was removed from the case over her objection, leaving her with Mr. Sarm as sole counsel. Second, the motion alleged that Mr. Sarm told her she should plead guilty "with the expectation of a sentence of 5 to 8 years" and she received more time than that. *Id.* at 5.

The Court considered the government's response and Collins' reply before denying her motion. R. 170. The Court found that Collins had failed to show that Mr. Martinkus was actually removed from her case or how his acting as cocounsel prejudiced her at any point. R. 170 at 8. The Court found there was no ineffective assistance of counsel as applied to any sentence prediction she received from Mr. Sarm as she had not made a sufficient showing on any of her arguments. *Id.* at 9-10.

### E.    Compassionate Release Motions

On April 1, 2025, Collins filed a motion under 18 U.S.C. § 3582(c)(1)(A) claiming that extraordinary and compelling reasons existed for her release. R. 172 at 15. She claimed that she exhausted her administrative remedies. *Id.* at 13-14. As her first reason for release, she claimed that she should be released to care for her ailing mother and young daughter. *Id.* at 14-16. She next claimed that she was erroneously sentenced as a career offender because her priors are too old and her offense was not a "controlled substance offense." *Id.* at 16-24. She referenced the First Step Act's passage. *Id.* at 24-28. The government objected to the motion arguing that she had not exhausted her administrative remedies, that no extraordinary and compelling reasons existed warranting release; and that the 18 U.S.C. § 3553(a) sentencing factors independently precluded the requested relief. R. 173.

The Court denied Collins' motion on several grounds. The Court agreed with the government that she failed to submit sufficient evidence that she had exhausted her administrative remedies. R. 175 at 4. The Court proceeded on a merits analysis and observed that, had the motion not been denied on exhaustion grounds, the motion would

have been denied anyway. *Id*. The Court observed that the defendant's family circumstances, including the declining health of her elderly mother, were not extraordinary and compelling reasons warranting a sentence reduction. *Id*. at 6. The Court further observed that her remaining arguments relating to an alleged sentencing error and unwarranted sentence disparities were improper or irrelevant and did not meet the standard for relief. *Id*. at 7-8. In addition to the denial, the Court barred Collins from raising or re-raising any claims of sentencing errors in a future compassionate release motion. *Id*.

Collins submitted a second motion for compassionate release. R. 176. This motion was denied by the Court in a short order. R. 177. The Court observed that evidence of administrative remedies exhaustion had now been included but there remained a lack of evidentiary support for the Court to assess her family circumstances and denied the motion. *Id*. at 3. As to her re-raised sentencing disparities argument, the Court reiterated its previous ruling. *Id*.

Collins thereafter submitted the instant, third motion for compassionate release. R. 178. The bulk of the instant filing is a duplicate of the second motion filed at R. 175 and omits pages 2-5 and 6-9 according to its internal numbering. R. 178 at 4-5, 6-7. New material is contained in the cover letter and a new argument is made regarding her family circumstances. R. 178 at 15-18.

F.     **Imprisonment**

During her time in the Bureau of Prisons (BOP), Collins has maintained a record with one blemish. On May 23, 2024, she was sanctioned for the attempted introduction of a vape device. Collins has sought out educational advancement classes including safe food handling, cosmetology, geography and oceanography. According to the BOP website, Collins is currently housed at the medium security Federal Correctional Institution in Greenville, Illinois. Information provided to the undersigned by the Bureau of Prisons over the phone indicates that Collins is housed at the minimum security camp adjacent to the facility.[3] Her current release date is July 28, 2032.

## <u>LEGAL FRAMEWORK</u>

A sentence of imprisonment is final and may not be modified once it has been imposed, except in narrow circumstances: "'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). *See also,* 18 U.S.C. § 3582(c). Accordingly, it is well established that a district court has no inherent authority to reconsider or alter an imposed sentence except pursuant to statutory authorization. *See, e.g., United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003) ("Once a court sentences a criminal defendant, it has jurisdiction to continue hearing related issues only when authorized by

---

[3] Consequently, the undersigned will cause to be delivered a copy of this Response to Collins at the FCI Greenville camp address instead of the FCI Aliceville address listed in her motion. R. 178 at 2.

statute or rule."). Historically, a federal court had no jurisdiction to make substantive changes to its sentence after expiration of the court term in which it had been issued. *See, e.g.*, *United States v. Mayer*, 235 U.S. 55, 67 (1914). The more recently enacted Section 3582(c) confirmed that general rule still applied, by stating the prohibition affirmatively— "[t]he court may not modify a term of imprisonment once it has been imposed." Yet Section 3582 did carve out three narrow exceptions under which a sentenced inmate may be released early from the imposed sentence; among those exceptions is an inmate who demonstrates "extraordinary and compelling reasons" justifying his early release under Section 3582(c)(1)(A)(i).

A court may grant a defendant's own motion for a reduction in sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Seventh Circuit has made clear that this "exhaustion requirement" is mandatory. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the court finds that "extraordinary and compelling reasons warrant such a reduction." As the movant, a defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

To note, in 2022, the Sentencing Commission regained a quorum and, after public notice and comment, voted on April 5, 2023, to promulgate amendments to the Guidelines Manual, including to Section 1B1.13's policy statement. 88 Fed. Reg. 28, 254-28, 281 (May 3, 2023); *see also* Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023). The amendments to Section 1B1.13 render the policy statement applicable to defendant-filed motions.[4] The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg.

---

[4] While not at issue here, the United States maintains that the Sentencing Commission exceeded its statutory authority by adopting USSG § 1B1.13(b)(6). The Sentencing Commission's authority to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), necessarily is limited by Congress's clear directive that any such reasons be both "extraordinary and compelling," 18 U.S.C. § 3582(c)(2). That Congress did not provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes. By reducing sentences based on intervening changes in the law, moreover, subsection (b)(6) undermines congressional design by supplanting the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences" in 28 U.S.C. § 2255. *Jones v. Hendrix*, 599 U.S. 465, 473 (2023). Finally, allowing individual district courts to recognize intervening changes in the law as extraordinary and compelling circumstances will produce the very sort of unwarranted sentencing disparities that the Sentencing Reform Act of 1984 was designed to eliminate. 18 U.S.C. § 3582(c)(1)(A). No reasonable interpretation of that phrase can encompass a nonretroactive or intervening change in the law; every lawfully imposed sentence reflects the law at the time of sentencing, and any disparity caused by a change in sentencing law—whether by statutory or an intervening judicial decision—merely reflects the operation of ordinary nonretroactivity principles and the ordinary process of the legal system. Statutory context confirms this interpretation, because in the very next paragraph of Section 3582(c), Congress expressly addressed the retroactive application of some changes in law. See 18 U.S.C. § 3582(c)(2). That Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes. By reducing sentences based on intervening changes in the law, moreover, subsection (b)(6) undermines congressional design by supplanting the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences" in 28 U.S.C. § 2255. *Jones v. Hendrix*, 599 U.S. 465, 473 (2023).

at 28, 254; *see* 28 U.S.C. § 994(p). Regarding interpretation of what might qualify as extraordinary, the Seventh Circuit has also noted that "'[e]xtraordinary is a subset of 'unusual.'" *United States v. Krilich*, 257 F.3d 689, 693 (7th Cir. 2001). Courts have thus cautioned that a command restricting judicial relief to "'extraordinary' conditions must be taken seriously." *Id*.

**ARGUMENT**

### A. Exhaustion

The Court has provided several opportunities for Collins to supply evidence that she has exhausted her administrative remedies. It appears that she has done so. As such, she has complied with the exhaustion requirement of § 3582(c), and her request is properly before the Court.

### B. Family Care

Collins should not be granted compassionate release simply because she has a sick mother who is not "incapacitated." In her newest motion, Collins makes additional claims about her mother's health. She lists additional medical ailments suffered by her mother and claims that her mother has "balance, coordination, cognition" problems and impairment performing activities of daily living. R. 178 at 13. She identifies her mother as having a "substantial risk of further deterioration, and a significant inability to manage her own healthcare needs." *Id*. at 14. She further claims that her mother is "unable to live safely and independently" and worries about the strain of caring for Collins' teenage daughter. She asserts that the only other available family member has been diagnosed with terminal cancer and is unable to participate in the mother's care. *Id*.

12

Incorporated in the motion are 13 pages of medical records for her mother. The limited records support some of what Collins claims. They contain a summarized history of medical problems including diabetes and fall risk. R. 178 at 39. In one examination summary from January of 2024, the mother saw a doctor while complaining of tinnitus and dizziness. The report indicates that "[the mother] states generally when she can get up and out of bed, she does okay and does not have the episodes as often." *Id.* In another examination from May of 2024, it was noted that "[the mother] does use a cane to assist with ambulation." *Id.* at 35.

Based on the supplied records, the mother has medical problems and concerns. However, the select medical records do not patently support several of the claims made. There is no medical analysis in the records of what or how many activities of daily living the mother cannot perform. The records offer no medical opinion that the mother has specific cognition problems or that she is unable to live independently safely. There is no mention of the medical impact that caring for Collins' teenage daughter has on the mother. The bulk of the conclusions that Collins invites the Court to make about her mother's health simply aren't supported by the records supplied.

Pursuant to U.S.S.G. § 1B1.13(b)(3)(B), Collins must show that her mother is "incapacitated" and that Collins "would be the only available caregiver" for her. There are several issues with Collins' claims. There is no proof that her mother is "incapacitated." A serious medical diagnosis or condition alone does not amount to "incapacitation" within the meaning of § 1B1.13(b)(3), as it typically means that an individual is completely disabled and unable to provide self-care or "is totally confined

to a bed or chair." *United States v. Gross*, No. 1:17-CR-37-HAB, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024). "Proving incapacity is a high bar." *Id*. The limited medical records actually rebut Collins' claims in two places. In January and May of 2024, the medical documentation weighs against a finding of incapacitation because the mother is mobile and has a medical device, a cane, to assist with her mobility. The records do not indicate that she is bedbound or otherwise immobile.

The burden is on Collins to sufficiently articulate how her mother's medical condition is incapacitating enough to justify the need for Collins as a caregiver. *United States v. Bond*, No. 19-cr-20018, 2025 WL 441761, at *7 (C.D. Ill. Feb. 10, 2025) citing *United States v. Villar*, No. 16 CR 340, 2024 WL 2939018, at *4 (N.D. Ill. June 11, 2024). As noted in *Villar*, copies of letters from a primary care physician noting the nature of the medical condition and the possible "benefit from receiving assistance at home with day to day [sic] tasks as well as assistance with transportation" alone did not amount to establishing incapacitation. *Id*. Additionally, the *Villar* Court noted that the defendant did not adequately establish why none of his friends or relatives had the time, money, and resources to assist, nor did he include any information about financial resources or eligibility for public benefits. *Id*. Most of those data points are again lacking here.

Additionally, Collins must be able to demonstrate that she is the *sole* available caregiver for the incapacitated family member. *United States v. Lisi*, 440 F.Supp.3d 246, 252 (S.D.N.Y. 2020) ("The animating principle of [U.S.S.G. § 1B1.13(b)(3)] is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the

defendant would be the only available caregiver."). Courts also generally require evidence from several sources documenting that a defendant would be the only available caregiver. *United States v. Lindsey,* 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021). Again, the burden is on Collins to demonstrate this absence of additional support for her ailing mother. *See United States v. Pulley*, No. 4:06-CR-40057-JPG, 2024 WL 518993, at *3 (S.D. Ill. Feb. 9, 2024), *reconsideration denied*, No. 4:06-CR-40057-JPG-7, 2024 WL 2815429 (S.D. Ill. June 3, 2024).

Collins does do more than before to identify the lack of other available family members to provide care, she alleges her sister has terminal cancer. But this runs into the same problem as before. There is nothing to indicate the sister has the medical problem Collins alleges she does. The only medical records included are those of her mother. Even if the sister's cancer is true, that point only matters if Collins can prove that her mother is incapacitated, which she has not. Collins also fails to include any information or analysis about any public benefits the mother would be entitled to, which may include home care.

The cases Collins cites also demonstrate how her petition fails in comparison to successful compassionate release petitions. The defendant in *United States v. Bucci*, 409 F.Supp.3d 1, 2 (D. Mass. 2019) was granted compassionate release to care for his ailing mother because he was the *only* potential caregiver and he had shown rehabilitation in prison through "devoting much of his time to care for terminally ill inmates." Collins' petition fails to approach the showing in *Bucci*. Her citation to *Lisi* equally shows the inadequacy of her assertions. 440 F.Supp.3d 246, 252 (S.D.N.Y. 2020) ("Here, the Court has received evidence from several sources indicating that Lisi is the only available

15

caregiver for his mother, due to both the apparent incompetence or neglect of her hired aides and her daughter's (Lisi's sister's) either inability or complete aversion to helping her.).

Simply put, Collins again fails to demonstrate that her mother is "incapacitated" within the meaning of U.S.S.G. § 1B1.13(b)(3)(B), she fails to establish that she is the *sole* available caregiver, and she has not shown an extraordinary and compelling reason for release.

### C. Unwarranted Sentence Disparities

Collins next claims that compassionate release would be appropriate to avoid unwarranted sentence disparities. R. 178 at 16-19. She states that the First Step Act's passage makes it so "leaving her current sentence in place creates disparity between Collins and comparably situated defendants." *Id.* at 17. She then cites a long list of cases with parentheticals giving a one sentence explanation of what she believes the cases hold. Her argument, as it was in her previous motions for compassionate release, is ambiguous and poorly developed.

As before, Collins does not identify any particular theory or show through any comparison how her below-guideline sentence is an "unwarranted disparity." While she cites a long list of cases, Collins never explains how the First Step Act created a disparity or any other particular theory on why she thinks that her sentence is an unwarranted disparity. *See United States v. Newbern,* 51 F.4th 230, 233 (7th Cir. 2022) (explaining that district courts are not required to respond to frivolous or poorly developed arguments).

The Court previously observed that the cases cited in her motion on this point were either "distinguishable, non-binding, unpersuasive, completely irrelevant or various combinations of those characteristics." R. 175 at 8. *See also* R. 177 at 3 (reiterating same). The Court should again find that Collins "has not provided any meaningful argument or authority supporting her position, nor has she sufficiently articulated any facts or circumstances demonstrating any kind of sentence disparity" and thus failed to demonstrate an extraordinary and compelling reason warranting a sentence reduction. *Id.*

### D. Rehabilitation

Collins' motion also identifies her "remarkable rehabilitation" as a basis for sentence modification under 18 U.S.C. § 3582(c)(2). She outlines a series of very positive rehabilitative efforts she has undertaken including vocational training, academic efforts, a record of sobriety and compliance, her positive health, and participation as a Unit Orderly. She also notes that her Summary Reentry Plan contains positive factors that would set her up to success at the completion of her incarceration.

As the Court has already done, she should be commended for her rehabilitative efforts while in custody. However, her progress toward rehabilitation alone is not a ground for early release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for early release.); *United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022) (same). Indeed, "[t]aking classes while incarcerated is common rather than extraordinary." *United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023). The Court should deny relief on this ground as well.

17

### E.  The § 3553(a) Factors Weigh Against Release

Even if the Court finds that any of the reasons offered by Collins would sustain an "extraordinary and compelling" finding, the 18 U.S.C. § 3553(a) factors still weigh against release. Collins has had a long adulthood of repeated crime and no sentence thus far has either rehabilitated or deterred her from committing new ones. Now, she is serving her longest sentence yet and an early release from custody would undercut the most significant court action yet taken to right her on the path of wrong she has taken for so long. To release her this early into her sentence would be inconsistent with promoting respect for the law and reflecting the seriousness of her offense. Collins committed this new offense only days after release from her most recent state sentence. There is little in her motion to show that she has truly changed her ways.

Furthermore, the facts of her case call into question the propriety of release from a deterrence perspective. Collins is incarcerated, in part, for conspiring with her daughter to distribute methamphetamine. That daughter, Mills, said that Collins acted as a source of methamphetamine for her. 2:20-cr-20060, R. 31 at 12. While Collins' motion does focus on the health of her mother, it implies that part of the basis for her needing release is to care for a minor daughter in the care of her mother. R. 178 at 17. It would be inappropriate to release Collins from an already properly fashioned amount of incarceration, designed in part to deter her from future crimes, to go care for a daughter when she is serving a sentence for partly enabling the criminality of another daughter.

WHEREFORE, the United States of America respectfully requests that this Court deny the motion.

Respectfully submitted,

GREGORY M. GILMORE
Acting United States Attorney

s/ WILLIAM J. LYNCH
William J. Lynch
Assistant United States Attorney
IL Bar No. 6324270
201 S. Vine Street, Suite 226
Urbana, Illinois 61802
Telephone: (217) 373-5875
William.Lynch@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have caused to be mailed within two business days this document to the following non CM/ECF participant:

> Christine A. Collins
> Inmate No. 54807-074
> FCI Greenville
> Federal Correctional Institution
> Satellite Camp
> P.O. Box 6000
> Greenville, IL 62246

s/ *William J. Lynch*
Asst. United States Attorney
